

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00078-CV

**IN THE INTEREST OF J.S.H.**, D.P.C.H., B.I.H., C.C.H., and C.L.H., II, Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00437
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Irene Rios, Justice

Sitting:  Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: July 19, 2023

AFFIRMED

Appellant Father C.H. appeals the trial court's order terminating his parental rights to his children, J.S.H, D.P.H., C.C.H., and C.L.H (hereinafter, "the children").[1] Father C.H. challenges the sufficiency of the evidence supporting termination under statutory ground (E). Father C.H. also challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the children's best interests. In his third issue, Father C.H. argues—because the termination of his parental rights was based on insufficient evidence—the trial court's conservatorship determination was an abuse of discretion. We affirm the trial court's order.

---

[1] To protect the identity of the minor children in an appeal from an order terminating parental rights, we refer to the parents as "Mother," "Father C.H.," "Father M.S.," and the children by using their initials or as "the children." *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2). The trial court's order terminated Mother's rights as to all five children: J.S.H, D.P.H, B.I.H., C.C.H., and C.L.H. Father C.H. is the biological father to all but one of the children, B.I.H. Father M.S. is the biological father of B.I.H. Although the trial courts order terminates the parental rights of Mother, Father C.H., and Father M.S. as to their respective children, only Father C.H. appeals.

## BACKGROUND

The Department of Family and Protective Services ("the Department") initially became involved in the underlying case on March 1, 2022, when it received a report of ongoing domestic violence in the home. The Department initiated removal proceedings after Mother and Father C.H. failed to cooperate with Family-Based Safety Services, and the Department received another report of domestic violence in the home.

On March 21, 2022, the Department filed a petition seeking emergency removal, temporary managing conservatorship of the children, and termination of Father C.H.'s parental rights. The trial court appointed the Department temporary managing conservatorship, and the Department split the children into various kinship homes with paternal relatives.

On January 17, 2023, the trial court held a bench trial. The trial court heard testimony from: Jonathan Kim, the Department's investigator; Natalie Robles, the Department's caseworker; and Father C.H.

On January 24, 2023, the trial court signed an order terminating Father C.H.'s parental rights to the children. Specifically, the trial court terminated Father C.H.'s parental rights based on statutory grounds (E), (N), (O) and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (E), (N), (O), (P). The trial court also found that it was in the children's best interests to terminate Father C.H.'s parental rights. *See id.* § 161.001(b)(2). Father C.H. appeals.

## STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re*

*M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's judgment regarding credibility determinations. *Coburn*, 433 S.W.3d at 823–24.

### STATUTORY GROUNDS

The trial court terminated Father C.H.'s parental rights under statutory grounds (E), (N), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. Father C.H. only challenges the sufficiency of the evidence supporting statutory ground (E).

Only one predicate ground finding under subsection 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsections 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Father C.H. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019). Here, due process requires us to review the trial court's findings under subsection 161.001(b)(1)(E) of the Texas Family Code. *See In re C.W.*, 586 S.W.3d 405, 407 (Tex. 2019) ("[W]hen a trial court makes a finding to terminate parental rights under section

161.001(b)(1)(D) or (E) and the parent challenges that finding on appeal, due process requires the appellate court to review that finding and detail its analysis.").

Assuming a valid best-interest finding, the trial court may order termination of the parent-child relationship if the trial court finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment[.]" *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Instead, to endanger means to expose the child to loss or injury or to jeopardize his or her emotional or physical well-being. *Id.* The trial court must determine "whether evidence exists that the endangerment of the child's physical [or emotional] well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied).

Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when . . . the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d 92, 110 (Tex. App.—San Antonio 2017, no pet.). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *3 (Tex. App.—San Antonio Mar. 11, 2020,

pet. denied) (mem. op.). "[E]ndangering conduct is not limited to actions directed towards the child." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

Here, Jonathan Kim, the Department's investigator, testified that domestic violence occurred between Mother and Father C.H. while they were receiving family-based services. Specifically, Kim testified he implemented a safety plan for Mother and the children, including taking Mother and the children to an out-of-town shelter because Mother expressed a concern regarding staying in local shelters as Father C.H. knew their locations. According to Kim, Mother admitted that she was the victim of ongoing domestic violence. "If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment . . . ." *In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied). Kim opined that the domestic disputes pose a danger to the children. *See R.S.-T.*, 522 S.W.3d at 110 ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment.").

The children also made outcries of domestic violence. Natalie Robles, the CPS caseworker assigned to the case, testified that Mother relayed several incidences in which Father C.H. threatened to physically harm her and even threatened to kill her. On at least two occasions, the domestic violence perpetrated by Father C.H. resulted in Mother being transported by law enforcement away from the residence. Robles indicated Mother did not feel safe from Father C.H. even though she had been transported away from the residence.

According to Robles, Mother wanted to complete her service plan; however, Father C.H. prevented her from doing so by taking her phone and restricting her transportation. Father C.H.'s course of conduct—preventing Mother from taking steps to reunify with her children—further supports a finding that Father has endangered the children's well-being and "subjects [them] to a life of uncertainty and instability." *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio

1998, pet. denied). The testimony regarding repeated incidences of domestic violence perpetrated by Father C.H. support's the trial court's endangerment finding under subsection (E).

While illegal drug use alone may not always be sufficient to prove endangerment, it is certainly a factor to be considered in the overall analysis, as it potentially "exposes the child[ren] to the possibility that the parent may be impaired or imprisoned." *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "Evidence of narcotics use and its effect on a parent's life and ability to parent may establish that the parent has engaged in an endangering course of conduct." *Id.* at 618; *see also J.O.A.*, 283 S.W.3d at 345 ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."). Moreover, proof that the parent's drug use actually caused injury to the children is not required. *See Vasquez v. Tex. Dep't of Protective & Regul. Servs.*, 190 S.W.3d 189, 195–96 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (terminating Mother's parental rights without proof that her drug use actually injured her children).

Pursuant to his service plan, Father C.H. was required to submit to random drug tests and complete drug treatment. In total, Father C.H. missed ten drug tests. Father submitted to a hair follicle test, and the results led to concerns that he was using illegal substances. Father claimed the drug tests produced a positive result for drugs prescribed by his pain management doctor. However, Robles testified Father did not respond when she asked for a medical release of information from the healthcare provider. *See Coburn*, 433 S.W.3d at 823–24 (deferring to the trial court's judgment regarding credibility determinations).

When asked if he uses drugs, Father C.H. claimed that he uses marijuana but has a medical marijuana card. However, Father C.H. never produced the card to Robles. Upon executing a warrant, law enforcement searched Father C.H.'s home and found illegal substances in Father C.H.'s pockets. When Kim interviewed the children shortly after this encounter, the children

disclosed that there were additional drugs in the home. Robles testified that on one occasion during a supervised visit, Father fell asleep for twenty to thirty minutes and appeared to be, in her opinion, under the influence. Although Father C.H. denied showing up intoxicated to that visit, "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Id.* at 823 (quoting *A.L.E.*, 279 S.W.3d at 427).

Last, Father C.H. did not successfully complete the drug treatment program required by his service plan. Father C.H.'s history of substance abuse and his unwillingness to remedy his substance abuse issues supports the trial court's finding that Father C.H. willingly engaged in a "course of conduct [that] creates a potential for danger which [he] is aware of but disregards." *R.S.-T.*, 522 S.W.3d at 110.

"Criminal conduct, prior convictions, and incarceration affect[] a parent's life and his ability to parent, thereby subjecting his child to potential emotional and physical danger." *See In re J.J.O.*, No. 04-18-00425-CV, 2018 WL 5621881, at *2 (Tex. App.—San Antonio Oct. 31, 2018, no pet.) (mem. op.). Generally, "conduct that subjects a child to a life of uncertainty and instability . . . endangers the physical and emotional well-being of a child." *S.D.*, 980 S.W.2d at 763. At the time of trial, Robles testified that Father C.H. had a warrant for a bond violation. In May of 2022, Father C.H. was arrested for making a terroristic threat against Mother and subsequently violated his bond by having contact with Mother. As mentioned above, law enforcement found illegal substances on Father C.H. after it executed an arrest warrant arising from an assault charge in December 2021.

Therefore, viewing all the evidence regarding domestic violence, illegal substance abuse, and criminal conduct in the appropriate light for each standard of review, we conclude the trial court reasonably could have formed a firm belief or conviction that Father C.H. "engaged in

conduct . . . which endangers the physical or emotional well-being of [his children]." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Accordingly, Father C.H.'s first issue is overruled.

## BEST INTERESTS

Father C.H. also challenges the sufficiency of the evidence to support the trial court's finding that termination of his parental rights was in the best interest of the children.

When considering the best interest of a child, we recognize the existence of a strong presumption that the children's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id.* § 263.307(b). We also consider the *Holley* factors.[3] *See Holley v. Adams*, 544 S.W.2d 367,

---

[2] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).
[3] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking

371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

*Children's Ages, Vulnerabilities, and Desires*

At the time of trial, the children were eleven, nine, seven, and four. Although the younger children may not be capable of expressing their desires pertaining to their relationship with their parents, "the fact finder may consider that the children have bonded with the foster family, are

---

custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

well-cared for by them, and have spent minimal time with a parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied).

Robles testified the children have bonded well with their foster parents, the placements are long-term placements, and the foster parents can meet the children's present and future physical and emotional needs. On the other hand, Robles testified that the children wish to return home with their mother and Father C.H. and that Father C.H. attended twenty of twenty-six visits. However, a child's young age renders the child vulnerable if left in the custody of a parent who is unable or unwilling to protect the child or attend to the child's needs. *Id*. During the visit when he fell asleep, Robles testified Father C.H. simply handed each child a cell phone to play with while he slept.

While the desires of the children weigh against termination, the vulnerability of their age weighs in favor of termination.

*Plans for the Child and Physical and Emotional Needs of the Child*

"[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). "The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *S.J.R.-Z.*, 537 S.W.3d at 693.

The trial court heard testimony that Father C.H. attended most of his weekly visits with the children, but Robles noted that Father C.H. fell asleep for about twenty to thirty minutes during one visit and simply handed a cellphone to each child to play with while he slept. Robles testified the children have bonded well with their kinship placements. According to Robles, the children's kinship placements are good caregivers, they foster sibling relationships, and they ensure that the children receive dental and medical care as needed. Robles also testified that the children are now

in therapy and stated the current placements are suitable to provide for the children's emotional and physical needs now and in the future.

In contrast, Robles opined that Father C.H. is unable to support his children emotionally, stating:

> [Father C.H.] continues to state that he . . . doesn't understand why [t]he Department's involved. He continues to fail to recognize how his involvement in the family's history of domestic violence has impacted the children.

Because the children's placements will provide them with permanency—as opposed to the environment of substance abuse and domestic violence created by Father C.H.—the trial court could have formed a firm belief or conviction that these factors weigh in favor of termination.

*Emotional and Physical Danger, Harm to the Child, and History of Abusive Conduct*

In determining the children's best interests, the trial court considered "whether there is a history of abusive or assaultive conduct by the child's family . . . ." TEX. FAM. CODE ANN. § 263.307(b)(7). "[E]ndangering conduct is not limited to actions directed towards the child." *J.O.A.*, 283 S.W.3d at 345. "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.). "This court considers a parent's conduct before and after the Department's removal of the children." *S.J.R.-Z.*, 537 S.W.3d at 693.

Here, the trial court heard testimony that Father C.H. and Mother had been in an ongoing cycle of domestic violence since at least December 2021. As stated above, Father C.H.'s violent conduct poses a danger to the children. It does not matter whether the violent conduct was directed towards the children or only Mother. *See Boyd*, 727 S.W.2d at 533 ("We decline to adopt the interpretation . . . by the court of appeals and expressly disapprove both its definition of 'danger' and its holding that danger cannot be inferred from parental misconduct."). Kim and Robles opined

that Father C.H.'s conduct poses a danger to the children because of Father C.H.'s history with violence and his unwillingness to comply with the services meant to address the domestic violence.

Based on this evidence, the trial court could have formed a firm belief or conviction that Father C.H. would remain a danger to the children. These factors support the trial court's best interests findings.

*History of Substance Abuse*

Another factor to consider in a best interest determination is "whether there is a history of substance abuse by the child's family . . . ." *See* TEX. FAM. CODE ANN. § 263.307(b)(8). "A parent's drug use supports a finding that termination is in the best interest of the child." *In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "The factfinder can give 'great weight' to the 'significant factor' of drug-related conduct." *Id.* (quoting *In re K.C.*, 219 S.W.3d 924, 927 (Tex. App.—Dallas 2007, no pet.)).

As mentioned in the statutory grounds section above, Father C.H. produced concerning results on drug tests, missed ten drug tests, was in possession of illegal drugs when he was arrested, and the children informed Robles there were illegal drugs in the home. *See C.H.*, 89 S.W.3d at 28 (holding evidence of statutory grounds may be probative of best interest).

Accordingly, the trial court could have formed a firm belief or conviction that this factor weighs in favor of termination.

*Programs, Acts or Omissions, Excuses for Acts or Omissions,*
*Willingness to Effect Positive Change*

According to his service plan, Father C.H. was required to participate in and complete a psychological evaluation, individual counseling, domestic violence classes, parenting classes, drug treatment, and pass random drug tests. Father C.H. signed the service plan, and it was made an order of the court. Robles testified the service plan was tailored to address the issues that led to the

children's removal. The trial court's order expressly stated that failure to comply with the plan may result in termination of Father C.H.'s parental rights.

Initially, Father C.H. refused to cooperate with the Department. Once he acquiesced, Father C.H. only partially complied with the requirements under the plan. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding failure to comply with a service plan may support a finding that termination of parental rights is in the child's best interest).

Robles testified that Father C.H. successfully completed his parenting classes. Robles also testified that Father C.H. completed his drug treatment program; however, he was still required to reengage in another drug treatment program. While Father C.H. reengaged in individual counseling, he was discharged for noncompliance less than three months before trial. Father C.H. did not take the psychological evaluation and did not start his domestic violence classes.

The evidence showed that Father C.H. missed ten random drug tests, and the hair follicle test he took caused concern he was using drugs. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because he was using drugs."). At trial, Father C.H. claimed he missed those tests because he was working out of town or was unable to obtain transportation. However, Robles testified that Father C.H. never presented pay stubs from when he claimed he was working and unable to take the drug tests. Robles also testified she offered Father C.H. transportation to his tests, but Father C.H. testified he was never offered transportation to take the tests. *See Coburn*, 433 S.W.3d at 823 (deferring to the trial court's credibility assessments since "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." (quoting *A.L.E.*, 279 S.W.3d at 427)).

Regarding his failure to start the domestic violence program, Father C.H. stated the program requires an admission that he is involved in domestic violence and his defense attorney advised him not to make that admission. However, the trial court could have disregarded this self-serving testimony and concluded Father C.H. did not take the steps necessary to rectify the domestic violence issues that led to the children's removal.

Although Father C.H.'s testimony presented an excuse for some of his shortcomings in completing his services, the trial court—as the factfinder—could have assigned more weight to Robles's testimony disputing Father C.H.'s excuses. *See Coburn*, 433 S.W.3d at 823–24 (explaining a reviewing court defers to the trial court's judgment regarding credibility determinations).

Accordingly, the trial court could have formed a firm belief or conviction that these factors weigh in favor of termination.

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father C.H.'s parental rights is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest findings.

## CONSERVATORSHIP

In his third issue, Father C.H. argues he should be named a possessory conservator of the children if the trial court's parental termination findings are based on insufficient evidence. However, because we have determined the trial court did not err in terminating Father C.H.'s parental rights, Father C.H. no longer has any legal rights with respect to the children and cannot

challenge the portion of the termination order that relates to appointment of conservators for the children. *See In re J.C.R.*, No. 04-18-00949-CV, 2019 WL 2110109, at *7 (Tex. App.—San Antonio May 15, 2019, pet. denied) (mem. op.); *In re E.O.R.*, No. 04-18-00248-CV, 2018 WL 5808293, at *5 (Tex. App.—San Antonio Nov. 7, 2018, no pet.) (mem. op.); *In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at *6 (Tex. App.—San Antonio Aug. 9, 2017, pet. denied) (mem. op.).

### CONCLUSION

We affirm the trial court's order of termination.

Irene Rios, Justice